# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID LEO HARRELL,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No.: 1:13-cv-01352 - JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF DAVID HARRELL AND AGAINST DEFENDANT CAROLYN COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY |

　　　　Plaintiff David Harrell asserts he is entitled to a supplemental security income under Title XVI of the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") erred in evaluating the evidence, and seeks judicial review of the decision to deny benefits. Because the ALJ failed to set forth legally sufficient reasons for giving less weight to the opinion of Plaintiff's treating physician and rejecting the credibility of Plaintiff's subjective complaints, the action is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. §405(g).

## BACKGROUND

　　　　Plaintiff filed his application for benefits on March 3, 2011, alleging disability beginning February 3, 2004. (Doc. 11-6 at 7.) His application was denied by the Social Security Administration initially on June 14, 2011, and upon reconsideration on September 13, 2011. (Doc. 11-3 at 12.) After requesting a hearing, Plaintiff testified before ALJ on June 20, 2012. (*Id.* at 28.) The ALJ found

1

Plaintiff was not disabled under the Social Security Act, and issued an order denying his application for benefits on July 3, 2012. (*Id*. at 12-21.) The Appeals Council denied Plaintiff's request for review of the decision on June 25, 2013. (*Id*. at 2-4.) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability,

1  the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial
2  gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

**A.  Relevant Medical Evidence**

Plaintiff visited the office of Dr. George Perdikis on January 13, 2010, complaining of "mild residual low back pain [with] radiation to . . . lower extremities." (Doc. 11-8 at 18.) Plaintiff described his pain range as "4-6/10," and said he had "adequate relief" with taking 30mg of Oxycodone every four to six hours. (*Id.*) In addition, Plaintiff reported he was able to perform activities of daily living with moderate difficulty. (*Id.*) Plaintiff was diagnosed with spondylosis, low back pain, and lower extremity pain. (*Id.*) At a return visit on February 9, 2010, Plaintiff reported his pain was "5-6/10," and he continued to be able to perform activities of daily living with "mod. difficulty." (*Id.* at 17.)

At the monthly visits with Dr. Perdikis in March and April 2010, Plaintiff reported his pain was "5-7/10." (Doc. 11-8 at 16-17.) Plaintiff exhibited a "slow gate," but was ambulatory without assistive devices. (*Id.*) He continued to report that he had "adequate relief" with Oxycodone. (*Id.*) In May 2010, Plaintiff stated his pain ranged from "4-7/10," and continued to report that he was "able to perform [activities of daily living]" with moderate difficulty. (*Id.* at 14.) Plaintiff reported his pain had increased to a range of "6-8/10" on June 1, 2010. (*Id.* at 13.)

On June 28, 2010, Plaintiff reported that taking Oxycodone at night made it difficult to sleep, and received a prescription of Oxycotin to address the issue. (Doc. 11-8 at 12.) Plaintiff continued to report his pain ranged from "6-8/10." Further, upon examination with Dr. Perdikis, Plaintiff reported

3

tenderness at the L/S levels in his back. (*Id.*) In July 2010, Plaintiff continued to report low back pain, but stated that the pain level decreased to "4-6/10." (*Id.* at 11.) This decreased pain continued through September 2010. (*Id.* at 9-10.)

On November 5, 2010, Plaintiff reported his back pain increased to "5-6/10," and that he had "suboptimal pain control" after his "insurance carrier denied Oxycontin." (Doc. 10-8 at 7.) He began taking Ambien for insomnia, and Dr. Perdikis increased the prescription for generic Oxycodone because Plaintiff was unable to get Oxycontin. (*Id.*) In December 2010, Plaintiff reported "adequate overall pain control" with the prescription change, and Dr. Perdikis noted Plaintiff was "stable pain wise." (*Id.* at 6, 73.)

Plaintiff continued to visit Dr. Perdikis in the beginning of 2011, reporting pain in the range of "5-7/10." (Doc. 11-8 at 2-4) Plaintiff reported that his back pain radiated to his left pain, but that he had "adequate relief [with] Oxycodone." (*Id.*) Further, Plaintiff said he remained able to perform activities of daily living with moderate difficulty. (*Id.* at 2.)

On April 26, 2011, Plaintiff had x-rays taken of his lumbosacral spine and an MRI of the lumbar spine. (Doc. 11-8 at 24-26.) Dr. Andy Herbold found Plaintiff had "moderate-to-severe disc space narrowing at L1-L2 level with sclerotic bony endplate changes at L1-L2 level." (*Id.* at 24.) Dr. Herbold found Plaintiff had "mild-to-moderate facet hypertrophy at the L4-L5 and L5-S1 levels and mild disc space narrowing at the L5-S1 level with grade 1 anterolisthesis of L5 over S1." (*Id.*) Further, Dr. Herbold found Plaintiff had "mild-to-moderate S-shaped scoliosis." (*Id.* at 26.)

Dr. John Chang performed a consultative orthopaedic examination on May 15, 2011. (Doc. 11-8 at 27-30.) Dr. Chang noted he did not review any medical records, and obtained information "though historical interview with the claimant." (*Id.* at 27.) Plaintiff reported that he had "low back pain and bilateral lower extremity pain . . . for many years," which he attributed to an injury suffered when working as a furniture mover in 2004. (*Id.* at 28.) Plaintiff told Dr. Chang that he had physical therapy and two epidural spinal injections "without any pain relief." (*Id.*) Plaintiff reported "his symptoms increase with prolonged sitting, prolonged standing and prolonged walking" and "improve when taking pain medication." (*Id.*) Dr. Chang observed that Plaintiff had "difficulty walking on his heels," but "moved freely in and out of the office and about the examination room." (*Id.* at 29.) Dr. Chang found

4

Plaintiff's range of motion was restricted in his thoracolumbar spine, but the range of motion was normal in the cervical spine. (*Id.*) Further, Plaintiff had tenderness "across the lower back" and was limited in his straight-leg raising. (*Id.*) Plaintiff's strength was 5/5 in all extremities, and his reflexes were active. (*Id.*) Based upon the examination, Dr. Chang determined Plaintiff was able to sit "without restrictions;" walk on uneven terrain or climb ladders without restriction; and "push, pull, lift, and carry 50 pounds occasionally and 25 pounds frequently." (*Id.* at 30.) In addition, Dr. Chang opined Plaintiff was able to perform postural activities such as "bending, kneeling, stooping, crawling, and crouching … on a frequent basis." (*Id.*)

On May 25, 2011, Dr. H.M. Estrin completed a physical residual functional capacity assessment. (Doc. 11-8 at 33-40.) Dr. Estrin noted that Plaintiff's strength was 5/5 at the consultative examination, and found that Plaintiff's ability to push and/or pull hand or foot controls was unlimited. (*Id.* at 34, 39.) Dr. Estrin opined that Plaintiff was able to lift and carry 25 pounds frequently and 50 pounds occasionally; sit for about six hours in an eight-hour day; and stand and/or walk a total of about six hours in an eight-hour day. (*Id.* at 34.) Further, Plaintiff had no manipulative or visual limitations, but was limited to performing postural activities—including climbing, balancing, stopping, kneeling, crouching, and crawling—on a frequent basis. (*Id.* at 36.)

Plaintiff had a consultation with Dr. Peter White on July 21, 2011, and reported "a history of hyperextension injury to the right knee and . . . chronic knee, wrist, and cervical, as well as lumbar back pain." (Doc. 11-8 at 110.) Dr. White noted Plaintiff "was referred to the clinic specifically to evaluate his cervical pain which [was] causing him severe muscle spasms which result[ed] in numbness and tingling spreading up the left side of his head approximately two times per month." (*Id.*) In addition, Plaintiff reported he received a corticosteroid injection approximately a year and a half before the consultation and that he "had two lumbar epidurals done in the past which had good results and resulted in 1 year of relief in between them." (*Id.*) Dr. White administered a corticosteroid injection in Plaintiff's right knee. (*Id.* at 111.)

Plaintiff visited the emergency room at Ridgecrest Regional Hospital on August 1, 2011, complaining about back pain. (Doc. 11-8 at 58-59.) He reported that he "[r]an out of Oxycodone" two days before visiting the hospital. (*Id.* at 60.) Plaintiff complained of lower back pain, anxiety, and

"feeling jittery." (*Id.* at 61.) The hospital noted that Plaintiff received 180 pills of Oxycodone on July 2, 2011, and advised Plaintiff he would not be "give[n] any further narcotics." (*Id.* at 60.)

On August 9, 2011, Plaintiff visited Dr. Perdikis and reported his pain was "7/10." (Doc. 11-8 at 65.). Plaintiff again received a prescription for Oxycodone. (*Id.*)

At a follow-up appointment with Dr. White on August 18, 2011, Plaintiff reported the knee injection gave him "approximately 2 hours of pain relief." (Doc. 11-8 at 104.) Plaintiff "report[ed] his pain is at baseline 7/10" and radiated down to his knee. (*Id.*) Plaintiff reported neck pain that "caus[ed] some stiffness [and] stabbing pain," as well as pain in his wrist "exacerbated with some numbness and tingling." (*Id.* at 104.) Dr. White determined that Plaintiff's muscle strength was 4/5 and his "[d]eep tendon reflexes [were] 2/4." (*Id.*) In addition, upon conducting a neurological examination, he found Plaintiff had "decreased sensation on the lateral aspect of the right knee, right foot, and . . . decreased sensation of the upper extremities." (*Id.*)

On September 6, 2011, Plaintiff reported his pain ranged from "5-7/10." (Doc. 11-9 at 10.) Dr. Perdikis found that Plaintiff had "a trigger point [in] the lower T-spine," where the pain was 9/10. (*Id.*) Plaintiff also exhibited tenderness at the L/5 level in April 2012. (*Id.* at 3.) Dr. Perdikis continued to note that Plaintiff walked with a slow gait, and was able to perform activities of daily living with moderate difficulty. (*Id.* at 3-9)

Dr. Perdikis completed a medical source statement on June 16, 2012. (Doc. 11-9 at 16-20.) Dr. Perdikis noted he first treated Plaintiff in 2007, and saw Plaintiff on a monthly basis. (*Id.* at 16.) He diagnosed Plaintiff with L/S spondylosis, low back pain, and lower extremity pain. (*Id.*) Dr. Perdikis noted Plaintiff had a reduced range of motion, sensory loss, and tenderness in his back. (*Id.* at 16-17.) Further, Dr. Perdikis believed Plaintiff suffered from anxiety and depression, and that his impairments would frequently interfere with his attention and concentration. (*Id.* at 17.) Dr. Perdikis believed Plaintiff could tolerate moderate work stress, but could not "tolerate high level" stress. (*Id.* at 18.) According to Dr. Perdikis, Plaintiff was able to walk about one block without rest or severe pain, sit 5-10 minutes at one time without needing to get up, and stand in one place 5-10 minutes without needing to sit or walk around. (*Id.* at 18.) Further, Dr. Perdikis believed Plaintiff required an assistive device for standing/walking; rarely lift 10 pounds; never twist and stoop; occasionally climb ladders and stairs,

turn his head, look up, or hold his head in a static position. (*Id.* at 19.) Finally, Dr. Perdikis believed Plaintiff was able to grasp items about 10% of each work day, reach about 10% of each work day, and perform fine manipulations about 25% of each day. (*Id.*)

**B.     Administrative Hearing Testimony**

Plaintiff testified before the ALJ at a hearing on June 20, 2012. (Doc. 11-3 at 26.) Plaintiff reported that he worked as a furniture mover until February 2004. (*Id.* at 33.) He estimated that the heaviest items he had to lift were "[a] couple 100 pounds." (*Id.*) Plaintiff said he injured his back while moving a sofa-recliner, and worked continued working for "about a month or so" following the injury. (*Id.* at 34.)

Plaintiff reported he was treated by Dr. Perdikis, who prescribed Oxycodone for pain and Ambien for sleep. (Doc. 11-3 at 37.) Plaintiff said his pain prevented him from working, and "just sitting at home, standing" could be "too much." (*Id.*) He testified that he would "sweep or rake, or something like that, but . . . only 10 minutes or so" before he had to lay down for "a half hour to an hour." (*Id.* at 37, 43.) Plaintiff stated he was able to bathe, dress himself, prepare simple meals, and go shopping for "a short period of time." (*Id.* at 37-38.) Plaintiff said he occasionally used a cane, which was prescribed by his doctor. (*Id.* at 38.)

He estimated he was able to stand "[f]ive, 10 minutes" before he needed to change positions. (Doc. 11-3 at 41.) Plaintiff said he was able to walk a "block or so" without a cane, and "[a] little bit" longer with his cane. (*Id.*) Further, Plaintiff said was unable to bend down, but could kneel to pick up items. (*Id.*) He believed he could safely lift and carry "less than 10 pounds," such as a laundry basket. (*Id.*) According to Plaintiff, he did housework such as laundry and "basic cleaning up" after his two grandchildren that he adopted. (*Id.* at 44.) He said he tried not to vacuum or sweep, and his grandchildren helped with these tasks. (*Id.* at 45.)

Plaintiff reported that his physician had discussed surgery with him, suggesting fusion of two of Plaintiff's vertebras. (Doc. 11-3 at 45.) Plaintiff said the surgery would have to be approved by Workman's Comp, and he had not received lifetime medical coverage. (*Id.*)

Vocational expert Randy Hettrick ("VE") testified after Plaintiff at the hearing. The VE classified Plaintiff's past relevant work as a furniture mover as heavy work, and said the work as a store

laborer was at the medium exertion level. (Doc. 11-3 at 47.) The ALJ asked the VE to consider a worker the same age and education as Plaintiff, who was able to "lift and carry 10 pounds occasionally, less than 10 pounds frequently, [and] stand and walk two to four hours in an eight-hour period." (*Id.*) In addition, the ALJ stated:

> I'm going to say every 30 minutes, this person needs to get off their feet for up to five minutes, and then can stand and walk again. Needs a medically required handheld device, the cane[,] for extended ambulation. Can sit six hours in an eight-hour period, but every 30 minutes the person needs to be free to reposition himself to relieve discomfort, although [he] would not have to leave the workstation. Pushing or pulling with the lower extremities, no operation of foot pedals. … Let's permit postural limitations. Permit occasional use of stairs, never ladders, ropes, or scaffolds. Permit occasional balancing, occasional stooping, no kneeling, no crouching, and no crawling. … Reaching and working overhead, limited to occasional bilaterally. … Let's avoid even moderate exposure to hazardous machinery and unprotected heights. Psychologically limitations, let's limit to simple, routine, repetitive tasks. Limit to low-stress tasks that would permit only occasional changes in the work setting. Permit frequent contact with the public and co-workers, but limit to superficial non-confrontational. No arbitration, and no negotiation types of activity.

(*Id.* at 47-48.) The VE opined a person with these limitations was unable to perform Plaintiff's past work, but "could perform the full range of sedentary unskilled work." (*Id.* at 48.) As examples, the VE stated the person was able to perform assembly work, *DOT*[1] 713.687-018; food and beverage order clerk, *DOT* 209.567-014; and sorting jobs such as button reclaimer, *DOT* 734.687-042. (*Id.* at 48-49.)

Next, the VE considered the individual, with the additional limitation of needing "unscheduled breaks that would be four to six times a day for 15 minutes," either away from or at the workstation. (Doc. 11-3 at 50.) The VE opined the worker would not be able to perform any work in the national economy. (*Id.* at 51.)

**C.    The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined first that Plaintiff had not engaged in substantial activity after the application date of February 3, 2011. (Doc. 11-3 at 14.) Second, the ALJ found Plaintiff's severe impairments included "lumbar spondylosis, osteoarthritis, and depression."

---

[1] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan,* 903 F.2d 1273, 1276 (9th Cir. 1990). The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1).

(*Id.*)  Third, the ALJ found Plaintiff did not have an impairment or a combination of impairments that met or medically equaled a Listing.  (*Id.* at 14-15.)  Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except lift/carry 10 pounds occasionally and less than 10 pounds frequently; stand/walk 2 to 4 hours in 30 minute increments with [the] use of a cane for extended ambulation; no foot pedals with the bilateral lower extremities; occasionally climb ramps/stairs, balance, and stoop; and never climb ladders/ropes, knee[l], crouch, and crawl; occasionally reach overhead bilaterally; avoid moderate exposure to dangerous machines and unprotected heights; limited to simple, routine, repetitive tasks; low stress environment permitting occasional changes in the work place; frequent interaction with the public and coworkers in structure relationships, superficial and non-confrontational.

(*Id.* at 15.)  With residual functional capacity, the ALJ found at step four that Plaintiff was "unable to perform any past relevant work."  (*Id.* at 19.)  However, Plaintiff could perform "jobs that exist in significant numbers in the national economy," such as final assembler optical, food and beverage clerk, and button reclaimer.  (*Id.* at 11-3 at 20.)  Therefore, the ALJ concluded Plaintiff was not "under a disability, as defined in the Social Security Act, since February 3, 2011, the date the application was filed."  (*Id.* at 21.)

## **DISCUSSION AND ANALYSIS**

Plaintiff asserts the ALJ erred by giving "partial weight" to the opinion of Dr. Perdikis, his treating physician.  (Doc. 15 at 6-10.)  In addition, Plaintiff argues that the ALJ failed to identify clear and convincing reasons for rejecting his testimony regarding his limitations and abilities.  (*Id.* at 11-14.)  On the other hand, Defendant argues that the ALJ properly evaluated the medical evidence and Plaintiff's credibility, and that the ALJ's decision should be affirmed by the Court.  (Doc. 16 at 14-21.)

**A.    The ALJ's assessment of Dr. Perdikis' Opinion**

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  In general, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability.  *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Further, an examining physician's opinion is given more weight than the opinion of non-examining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.

1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Thus, the courts apply a hierarchy to the opinions offered by physicians.

A physician's opinion is not binding upon the ALJ, and may be discounted whether or not another physician contradicts the opinion. *Magallanes*, 881 F.2d at 751. When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld by the Court when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"). The opinion of a physician may be rejected with "specific and legitimate" reasons, supported by substantial evidence in the record. *Lester*, 81 F.3d at 830; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Because opinion of Dr. Perdikis conflicted with the opinions of Drs. Chang and Estrin, the ALJ was required to set forth specific and legitimate reasons for rejecting Dr. Perdikis' opinion.

The ALJ noted that he gave "partial weight to the opinion of the claimant's treating doctor, Dr. Perdikis." (Doc. 11-3 at 18.) The ALJ observed:

> Dr. Perdikis indicated that the claimant continues to suffer from residual lower back pain that radiates into the lower extremities. The claimant exhibits reduced range of motion, tenderness, sensory loss, and muscle spasms. He also stated that the claimant suffers from depression and anxiety due to his physical condition. Dr. Perdikis opined that the claimant could only sit, stand, and walk 5 to 10 minutes at any one time and less than 2 hours in an 8 hour period, he needs to walk around every 30 minutes for 10 minutes, needs frequent shifting position at will, unscheduled breaks, use of a cane, rarely lift/carry no more than 10 pounds, rarely look down, occasionally turn his head, never twist or stoop, occasionally climb stairs or ladders, and could only use his hands and arms 10% of the time and fingers 25% of the time, and would likely miss work more than 4 days a month.

(*Id.* at 18-19.) However, the ALJ did not adopt all the limitations identified by Dr. Perdikis, because the ALJ determined that "Dr. Perdikis' opinion is inconsistent with his treating records." (*Id.* at 19.) According to the ALJ, "Dr. Perdikis' treating notes indicate that the claimant is receiving adequate relief from medication and that he is able to perform activities of daily living with some difficulty and that the claimant exhibits no neurological deficits." (*Id.*) The Ninth Circuit has determined these may constitute specific and legitimate reasons for rejecting a physician's opinion. *See, e.g.*, *Rollins v.*

*Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### 1. Plaintiff's level of activity

The opinion of a treating physician may be given less weight when the physician sets forth restrictions that "appear to be inconsistent with the level of activity that [the claimant] engaged in." *Rollins*, 261 F.3d at 856. The ALJ noted that Plaintiff "stated that [he] performs light housework, putting dishes in the dishwasher, laundry, and light dusting although it takes him longer to complete." (Doc. 11-3 at 15.) Importantly, these limited activities appear consistent with the limitations identified by Dr. Perdikis. For example, as the ALJ noted, Dr. Perdikis opined that Plaintiff could rarely lift and carry no more than 10 pounds, and Plaintiff testified that his laundry basket weighed "less than 10 pounds." (*See id.* at 18, 41.) Further, the ALJ does not explain how the ability to do these household chores is inconsistent with Dr. Perdikis' opinion that Plaintiff was only able to stand in one place 5-10 minutes without needing to sit or walk around, or that Plaintiff should be limited to "rarely" having to look down. (Doc. 11-9 at 18.) Consequently, these activities do not support the decision to give reject these portions of the opinion of Dr. Perdikis.

### 2. Inconsistencies with treatment notes

The Ninth Circuit has determined an ALJ may reject a medical opinion when an ALJ finds inconsistencies between a treating doctor's assessment and his own medical records. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see also Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (explaining internal inconsistencies within a physician's report supports the decision to discount the opinion of a physician).

Significantly, the inconsistencies the ALJ purports to identify do not support the decision to reject portions of Dr. Perdikis' opinion. For example, the ALJ opined the limitations identified by Dr. Perdikis were inconsistent with treatment notes because "treating notes indicate that the claimant is receiving adequate relief from medication and that he is able to perform activities of daily living with some difficulty and that the claimant exhibits no neurological deficits." (Doc. 11-3 at 19.) However, despite the treatment notes indicate Plaintiff had "adequate" relief from pain, there is no indication explaining how "adequate" undercuts the doctor's opinion. Notably, Plaintiff reported his pain ranged from 5 to 8 on a 10-point scale, and upon examination had a trigger point where the pain level was 9on

the 10-point scale despite the medication prescribed by Dr. Perdikis. (*See*, *e.g.,* Doc. 11-8 at 10, 12, 104; Doc. 11-9 at 10). Thus, it is not clear why the ALJ believes the observation that Plaintiff received "adequate" relief from medication is inconsistent with the limitations assessed by Dr. Perdikis.

Furthermore, although the ALJ indicated the treating notes showed "no neurological deficits," Dr. Perdikis indeed noted Plaintiff had sensory loss. (Doc. 11-9 at 16.) This finding is corroborated by Dr. White, who conducted a neurological examination of Plaintiff, and found "decreased sensation on the lateral aspect of the right knee, right foot, and . . . decreased sensation of the upper extremities." (Doc. 11-8 at 104.) Consequently, the ALJ's conclusion that Plaintiff had no neurological deficits is contrary to the objective medical evidence.

**B.    ALJ's Assessment of Plaintiff's Credibility**

In assessing credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Where the objective medical evidence shows an underlying impairment, and there is no affirmative evidence of a claimant's malingering, an "adverse credibility finding must be based on clear and convincing reasons." *Id.* at 1036; *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). Here, the ALJ noted Plaintiff's diagnosed impairments, and found Plaintiff's subjective complaints were "not fully credible." (Doc. 11-3 at 19.) Consequently, the ALJ was required to set forth clear and convincing reasons for rejecting Plaintiff's testimony regarding his pain.

Notably, in 1984, Congress amended the statutes governing disability to address allegations of pain. *See Bunnell*, 947 F.2d at 347; 42 U.S.C. § 423(d)(5)(A). With the amendment, "Congress clearly meant that so long as the pain is associated with a clinically demonstrated impairment, credible pain testimony should contribute to a determination of disability." *Howard v. Heckler*, 782 F.2d 1484, 1488 n.4 (9th Cir. 1986). The Ninth Circuit observed,

> [D]espite our inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working. Because pain is a subjective phenomenon, moreover, it is possible to suffer disabling pain even where the degree of pain, as opposed to the mere existence of pain, is unsupported by objective medical findings.

*Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  Therefore, an ALJ may not base an adverse credibility determination solely upon the medical evidence.  *Id.*; *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (the "lack of medical evidence cannot form the sole basis for discounting pain testimony").

Factors that may be considered as part of a credibility determination include: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct; (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  Here, the ALJ considered a number of factors, including Plaintiff's daily activities, the treatment he received, and the medical record. (Doc. 11-3 at 19.)  Plaintiff asserts these reasons were legally insufficient to support a rejection of her testimony regarding her symptoms. (Doc. 15 at 11-13.)

1.      Plaintiff's daily activities

When a claimant spends a substantial part of the day "engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations."  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citing *Fair*, 885 F.2d at 603).  For example, a claimant's ability to cook, clean, do laundry and manage finances may be sufficient to support an adverse finding find of credibility where the claimant alleges she is unable to maintain attention or concentration.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008).  Similarly, an ALJ may conclude "the severity of . . . limitations were exaggerated" when a claimant participates in community activities, gardens, and exercises. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).  However, an ALJ must make a specific finding that the daily activities are transferable to a workplace to refute a plaintiff's allegations of disability.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2008).

In this case, as noted above, the ALJ noted Plaintiff "performs light housework, putting dishes in the dishwasher, laundry, and light dusting." (Doc. 11-3 at 15.)  Significantly, the Ninth Circuit has made determined that the mere fact a claimant engages in normal daily activities "does not in any way

detract from [his] credibility as to [the] overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Moreover, the Court opined, "Daily household chores . . . are not activities that are easily transferable to a work environment." *Blau v. Astrue*, 263 Fed. App'x 635, 637 (9th Cir. 2008). Because the ALJ failed to find that Plaintiff spent a "substantial" part of his day engaged in such activities, or that these activities could be transferred to a work setting, Plaintiff's activities of daily living were not clear and convincing evidence to discount his credibility. *See Orn*, 495 F.3d at 639 (the ALJ erred rejecting a claimant's credibility where his "activities [did] not meet the threshold for transferable work skills, the second ground for using daily activities in credibility determinations"); *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (limited activities did not constitute convincing evidence that the claimant could function regularly in a work setting).

### 2. Treatment received

In assessing Plaintiff's credibility about his symptoms, the ALJ may consider "the type, dosage, effectiveness, and side effects of any medication." 20 C.F.R. § 404.1529(c). In addition, the treatment Plaintiff received, especially when conservative, is a legitimate consideration in a credibility finding. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("Evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (the ALJ properly considered the physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly excruciating pain" alleged). In this case, the ALJ observed that Plaintiff was "treated conservatively with pain medication." (Doc. 11-3 at 19.) However, Plaintiff argues his treatment should not be considered "conservative." (Doc. 15 at 13.)

Plaintiff notes that he was treated with narcotics, and received corticosteroid injections for his pain. (Doc. 15 at 13, citing, e.g., Doc. 11-8 at 28, 104, 110-11.) As Plaintiff observes, the Central District has determined that naroctics and epidural injections for pain are not conservative treatment. (*Id.*, citing *Tunstell v. Astrue*, 2012 WL 3765139, at *4 (C.D. Cal. 2012) (rejecting the ALJ's finding that plaintiff received only conservative treatment because "she had used narcotic pain medication…"); *Oldham v. Astrue*, 2010 WL 2850770, at *9 (C.D. Cal. 2010) (noting that epidural steroid injections are "performed in operation-like settings" and not a form of conservative treatment)).

The Ninth Circuit has criticized an ALJ for characterizing treatment as conservative where the claimant's treatment included "copious amounts of narcotic pain medication as well as occipital nerve blocks and trigger point injections," as well as cervical fusion surgery. *Lapeirre-Gutt v. Astrue*, 382 Fed. App'x. 662, 664 (9th Cir. 2010) (comparing the facts presented to those in *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008), where the ALJ found claimant's treatment to be conservative where claimant took only Ibuprofen to treat his pain)). Similarly, here Plaintiff was treated with narcotic medication and corticosteroid injections. Further, Plaintiff testified that his doctor recommended fusion surgery, pending approval by Workman's Comp. (Doc. 11-3 at 45.) Therefore, Plaintiff has not received treatment that is entirely conservative in nature. *See Parra*, 481 F.3d at 751 (9th Cir. 2007) (finding that over-the-counter drugs constituted conservative treatment); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (conservative treatment included physical therapy and the use of anti-inflammatory medication); *Tagle v. Astrue*, 2012 WL 4364242 at *4 (C.D. Cal. Sept. 21, 2012) ("While physical therapy and pain medication are conservative, epidural and trigger point injections are not"). This factor does not support the ALJ's rejection of Plaintiff's subjective complaints.

### 3. Objective Medical Record

The ALJ also purported to discount Plaintiff's credibility because he concluded the medical record did not support the degree of symptoms alleged by Plaintiff. (*See* Doc. 11-3 at 19.) Generally, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine… credibility." *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). However, the Ninth Circuit stated, "[S]ubjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch*, 400 F.3d at 681 ("lack of medical evidence cannot form the sole basis for discounting pain testimony"); SSR 96-7p, 1996 SSR LEXIS 4, at *2-3 (statements "may not be disregarded solely because they are not substantiated by objective medical evidence").

Here, the ALJ there was "no evidence of severe disuse muscle atrophy that would be compatible with his alleged inactivity and inability to function." (Doc. 11-3 at 19.) Further, the ALJ found that Plaintiff's symptoms were "stable with treatment." (*Id.*) However, the ALJ failed to discuss the

neurological deficits identified by Dr. Perdikis and Dr. White, who also found that Plaintiff had reduced muscle strength and deep tendon reflexes. (*See* Doc. 11-3 at 19.) Nevertheless, the medical record alone is not a clear and convincing reason to reject Plaintiff's testimony.

### 4. ALJ's failure to identify the testimony being discounted

"General findings," such as the ALJ provided here, "are insufficient." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citations omitted). The Ninth Circuit requires an ALJ to "**specifically identify what testimony is credible** and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (emphasis added); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ "**must state which pain testimony is not credible** and what evidence suggests the complaints are not credible"); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) ("The ALJ must provide 'clear and convincing' reasons to reject a claimant's subjective testimony, **by specifically identifying what testimony is not credible** and what evidence undermines the claimant's complaints"). Here, the ALJ failed to identify what portions of Plaintiff's testimony were not credible, and what testimony he rejected based upon the medical record.

The ALJ's failure to specifically discuss and identify what portions of Plaintiff's testimony he found not credible constituted a failure to apply the correct legal standards in evaluating the credibility of Plaintiff's testimony. As a result, the reasons for rejecting Plaintiff's credibility cannot be upheld by the Court. *See Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (an ALJ's credibility determinations may only be upheld when it is "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds."

### C.   Remand is appropriate in this action

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the District Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa* at 886 (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence,

16

(2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed when no useful purpose would be served by further administrative proceedings, or where the record has been fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988). The Ninth Circuit explained that "where the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited," the testimony can credited as true, and remand is not appropriate. *Lester*, 81 F.3d at 834; *see also Smolen*, 80 F.3d at 1292.

However, courts retain flexibility in crediting testimony as true. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether the plaintiff's testimony should be credited as true). A remand for further proceedings regarding the credibility of a claimant is an appropriate remedy. *See, e.g., Bunnell*, 947 F.2d at 348 (affirming the district court's order remanding for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints . . .").

Significantly, the ALJ failed not only to properly evaluate Plaintiff's credibility, but also failed to set forth legally sufficient reasons to properly reject the opinion of Plaintiff's treating physician. This opinion is intertwined with the testimony of the vocational expert regarding Plaintiff's ability to perform work in the national economy. Consequently, the matter should be remanded for the ALJ to re-evaluate the evidence.

## **CONCLUSION AND ORDER**

For the reasons set forth above, the ALJ erred in assessing the medical opinion of Plaintiff's treating physician, Dr. Perdikis. In addition, the ALJ failed to set forth clear and convincing reasons supported by substantial evidence in the record to reject Plaintiff's subjective complaints. As a result, the administrative decision should not be upheld by the Court. *See Sanchez*, 812 F.2d at 510.

///

Accordingly, **IT IS HEREBY ORDERED**:

1. Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is **REMANDED** for further proceedings consistent with this decision; and

2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff David Harrell and against Defendant Carolyn Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **December 31, 2014**              **/s/ Jennifer L. Thurston**
                                            UNITED STATES MAGISTRATE JUDGE